IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORVILLE MEAUX,<br><br>    Plaintiff,<br><br>    v.<br><br>NORTHWEST AIRLINES, INC.; ERIC EDMUNDSON, individually and as an employee of Northwest Airlines, Inc.,; PROFESSIONAL FLIGHT ATTENDANTS ASSOCIATION; and DOES 1- 20, Inclusive,<br><br>    Defendants.<br>_____/ | No. C 05-3733 CW<br><br>ORDER GRANTING DEFENDANT PFAA'S MOTION TO DISMISS |

    Defendant Professional Flight Attendants Association (PFAA) moves to dismiss Plaintiff Orville Meaux's amended complaint or, alternatively, moves for summary judgment.  Plaintiff opposes the motion.  In a separate motion, Defendant PFAA, together with its counsel of record, move for an order permitting its counsel to conditionally withdraw from this action.  Plaintiff has filed a

limited opposition to that motion. The matters were heard on October 6, 2006. Having considered all of the papers filed by the parties and oral argument on the motions, the Court denies Defendant PFAA's motion to dismiss, or, in the alternative, for summary judgment and grants Defendant PFAA's motion to permit conditional withdrawal of counsel.

## BACKGROUND

The following facts are alleged in Plaintiff's compliant. In 1977, Plaintiff began working for Defendant Northwest Airlines, Inc., or its predecessors. During the 1980's, he was stationed in Minnesota. While in Minnesota, Plaintiff filed an employment discrimination complaint, alleging that his supervisor, Defendant Eric Edmundson, imposed a disciplinary penalty on him because of his race. The Minnesota Department of Human Rights concluded that there was sufficient probable cause to support Plaintiff's employment discrimination complaint. Plaintiff then filed a lawsuit against Defendant Northwest, alleging race discrimination. The lawsuit settled.[1] Shortly after settlement, Plaintiff was transferred to Los Angeles, California.

While he was based in Los Angeles, Plaintiff satisfactorily performed his job duties; no disciplinary actions were taken against him. In November, 2000, he applied for a position as a purser, a senior flight attendant. Defendant Northwest promoted Plaintiff, and his new position, as a purser, resulted in increased pay and increased responsibility.

---

[1] Plaintiff states that the terms of the settlement are confidential.

2

Although Plaintiff was based in Los Angeles, he resided in the San Francisco Bay Area.  When a comparable position based in San Francisco was available, Plaintiff applied for the position.  He did not know that Defendant Edmundson, his former supervisor, was Defendant Northwest's base manager at the San Francisco International Airport.

In November, 2001, Plaintiff was transferred to a new position, as a purser, based at the San Francisco International Airport.  On his first day of work, he encountered Defendant Edmundson, who accused him of being late, even though Plaintiff claims he was not.  Defendant Edmundson made this accusation to harass Plaintiff in retaliation for Plaintiff previously bringing an employment discrimination complaint against him.  After this incident, Plaintiff complained to Defendant PFAA, through its representative Joanne Kazemi, that Defendant Edmundson was harassing him in retaliation for the events that transpired in Minnesota.  Ms. Kazemi stated that she did not intend to investigate or follow-up Plaintiff's complaint.

In December, 2001, Plaintiff sent a letter to Defendant Northwest concerning Defendant Edmundson's retaliatory behavior. He sent copies of the letter to Defendant Edmundson and Defendant PFAA's representative Ms. Kazemi.  Defendant Northwest never responded.

On August 2, 2003, Plaintiff was acting a purser on a flight from San Francisco to Japan.  There was a disruptive Japanese passenger on the flight.  The passenger became highly confrontational with Plaintiff, who was preparing the cabin for

3

landing. Plaintiff attempted to defuse the situation. He asked the passenger not to be disruptive. But the passenger would not listen and continued his disruptive behavior. Plaintiff then showed the passenger a "Notice of Violation Card," which is used to inform disruptive passengers of the federal airline regulations they are violating and the potential penalties associated with violating those regulation. When the passenger got off the plane, he complained to an agent of Defendant Northwest regarding Plaintiff's behavior.

Although Plaintiff had an excellent record and had not violated any rules, on September 29, 2003, Defendant Northwest demoted Plaintiff based on the passenger's complaints. The demotion was without just cause and not based on a reasonable, competent and unbiased investigation. After he was demoted, and removed from the position of purser, Plaintiff's supervisor, Dena Rasmussen, informed Plaintiff that he could write to the disruptive passenger's employer. Plaintiff sent a letter to the passenger's employer describing the incident and the passenger's disruptive behavior.

On January 26, 2004, Defendant Edmundson terminated Plaintiff for writing a letter to the employer.[2] Defendant PFAA filed a

---

[2] Plaintiff attached the termination letter to his declaration in opposition to Defendant PFAA's motion. According to the letter, Defendant Edmundson terminated Plaintiff because Plaintiff violated five of Defendant Northwest's Rules of Conduct for Employees. First, he engaged in conduct detrimental to Defendant Northwest's best interest when he "sent a lengthy letter to a passenger's employer falsely alleging that the passenger was disruptive, unruly, interfered with crew duties and violated Federal Air Regulations." Meaux Decl., Ex. B. Second, he failed to follow his "manager's direction to refrain from contacting the passenger

4

grievance based on Plaintiff's demotion and termination, though it later dropped the demotion grievance.  Defendant PFAA, however, failed to investigate the facts relating to Plaintiff's demotion and discharge, failed to obtain his entire personnel file and failed to interview key witnesses.  It processed his grievance in a perfunctory manner and therefore had insufficient information to evaluate Defendant Northwest's settlement offer, which Plaintiff rejected.  Defendant PFAA also processed Plaintiff's grievance in an arbitrary manner when it refused to forward his revised counter-settlement demand to Defendant Northwest and when it elected not to arbitrate his grievance without having performed a reasonable and competent investigation, or any investigation at all.

Although not alleged in the complaint, the parties do not dispute that, on March 9, 2005, Defendant PFAA decided not to expend funds on the representation of Plaintiff in arbitration of his grievance.  On March 15, 2005, Plaintiff received notice of this decision.

On September 15, 2005, Plaintiff filed this suit against Defendant Northwest, Defendant Edmundson and Defendant PFAA.[3]  He brought claims for violations of the Railway Labor Act (RLA),

---

directly regarding his complaint."  Id.  Third, he provided false and misleading information when he denied that his manager had instructed him to refrain from contacting the passenger directly.  Fourth, he failed to cooperate in the investigation when he provided false testimony.  And, fifth, he failed to use good judgment and common sense when he contacted the passenger's employer.

[3]In June, 2004, Plaintiff filed a suit against Defendant Northwest.  On September 27, 2005, the Court, in light of Defendant Northwest's bankruptcy, conditionally closed that case.

5

1  wrongful discharge in violation of public policy and breach of the
2  implied covenant of good faith and fair dealing.  Plaintiff has not
3  served Defendant Northwest with the summons and complaint;
4  Defendant Northwest filed for bankruptcy in September, 2005.  On
5  July 7, 2006, the Court granted with prejudice Defendant
6  Edmundson's motion to dismiss.  Thus, Defendant PFAA is the only
7  remaining Defendant.

8  On July 21, 2006, Plaintiff filed his amended complaint,
9  bringing a single cause of action against Defendant PFAA for breach
10 of the duty of fair representation.  Defendant PFAA contends that
11 this sole cause of action against it fails on several different
12 grounds, most of which it previously raised in its opposition to
13 Plaintiff's motion for leave to amend his complaint.

## LEGAL STANDARD

15 Dismissal is appropriate under Rule 12(b)(1) when the district
16 court lacks subject matter jurisdiction over the claim.  Fed. R.
17 Civ. P. 12(b)(1).  Federal subject matter jurisdiction must exist
18 at the time the action is commenced.  Morongo Band of Mission
19 Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th
20 Cir. 1988).  A federal court is presumed to lack subject matter
21 jurisdiction until the contrary affirmatively appears.  Stock West,
22 Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

23 A Rule 12(b)(1) motion may either attack the sufficiency of
24 the pleadings to establish federal jurisdiction, or allege an
25 actual lack of jurisdiction which exists despite the formal
26 sufficiency of the complaint.  Thornhill Publ'g Co. v. Gen. Tel. &
27 Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v.

6

1  <u>Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987).  In deciding a
2  Rule 12(b)(1) motion, the court assumes the truth of the
3  allegations in the complaint, unless controverted by undisputed
4  facts in the record.  <u>Roberts</u>, 812 F.2d at 1177.  An action should
5  not be dismissed for lack of subject matter jurisdiction without
6  giving the plaintiff an opportunity to amend unless it is clear
7  that the jurisdictional deficiency cannot be cured by amendment.
8  <u>May Dep't Store v. Graphic Process Co.</u>, 637 F.2d 1211, 1216 (9th
9  Cir. 1980).

DISCUSSION

I.  Motion to dismiss

   Defendant PFAA's motion is based on three arguments: (1) this Court lacks subject matter jurisdiction over the amended complaint because it is preempted by the RLA due to Plaintiff's failure to exhaust contractual grievance procedures; (2) Plaintiff's amended complaint is time-barred; and (3) Plaintiff has failed to plead or establish facts sufficient to support a cognizable claim for the breach of duty of fair representation.  Because the Court dismisses Plaintiff's claim, for failure to pursue contractual grievance procedures, the Court need not address Defendant PFAA's second and third arguments.

   As noted above, Defendant PFAA argues that the Court lacks subject matter jurisdiction over the amended claim for breach of the duty of fair representation because Plaintiff failed to exhaust mandatory contractual remedies and thus his claim is preempted under the RLA.  This is the second time Defendant PFAA raises this argument.  It first raised this argument in its opposition to

7

Plaintiff's motion for leave to amend his complaint.

In its order granting Plaintiff leave to file his amended complaint, the Court cited <u>Czosek v. O'Mara</u>, 397 U.S. 25 (1970). In <u>Czosek</u>, the Supreme Court held that a suit against a union for breach of its duty of fair representation is "not subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts."  397 U.S. at 27 (noting that a claim against a union for breach of its duty of fair representation is "a discrete claim quite apart from the right of individual employees expressly extended to them under the Railway Labor Act to pursue their employer before the Adjustment Board").

In its current motion, Defendant PFAA acknowledges the Court's prior ruling.  But it notes that the Supreme Court in <u>Czosek</u> held that a claim for the duty of fair representation did not require exhaustion of <u>administrative</u> remedies.  Here, Defendant PFAA argues that Plaintiff's claim against it should be dismissed because Plaintiff failed to exhaust his <u>contractual</u> remedies.  Defendant PFAA cites cases not previously cited, supporting its argument that Plaintiff's duty of fair representation claim requires exhaustion of contractual remedies available under the collective bargaining agreement.

In <u>Carr v. Pacific Maritime Ass'n</u>, 904 F.2d 1313, 1317 (9th Cir. 1990), the Ninth Circuit explained that the requirement that employees must exhaust contractual grievance procedures before bringing an action against their employer for breach of the collective bargain "applies with equal force to claims brought against a union for breach of the duty of fair representation."

8

The Ninth Circuit repeated this requirement in <u>Croston v. Burlington Northern Railraod. Co.</u>, 999 F.2d 381 (9th Cir 1993), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246 (1994),[4] one of the cases Defendant PFAA cites for the first time.  <u>See also</u> <u>Beriault v. Local 40, Super Cargoes and Checkers, ILWU,</u>, 501 F.2d 258, 266 (9th Cir. 1974) (although court had jurisdiction, under 28 U.S.C. § 1337, to entertain suits for breach of the duty of fair representation, the court dismissed the unfair representation claim against the union because the plaintiff failed to pursue contractual grievance procedures).

Plaintiff responds that <u>Czosek</u> is the law of this case and argues that <u>Croston</u> was wrongly decided.[5]  As noted above, however, <u>Czosek</u> held that administrative exhaustion is not requirement; it did not hold that an employee bringing a claim for breach of the duty of fair representation need not exhaust contractual grievance

---

[4] In addition to holding that an employee is required to exhaust contractual grievance procedures before bringing a claim against a union for breach of the duty of fair representation, the <u>Croston</u> court also held that an employee's State handicap discrimination claim was preempted by the RLA.  999 F.3d at 387-89.  In <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246 (1994), the Supreme Court held that a State law cause of action is not preempted by the RLA if it involves rights and obligations existing independent of the collective bargaining agreement.  Thus, the portion of <u>Croston</u> holding that a State handicap discrimination claim is preempted by the RLA is no longer good law.  The holding that an employee, bringing a duty of fair representation claim, must exhaust her or his contractual grievance procedures, however, remains good law.

[5] In Plaintiff's opposition, he states that, based on Defendant PFAA's bad faith conduct in bringing this motion, he seeks substantial sanctions from Defendant PFAA in the amount of his attorneys' fees.  Because sanctions are not properly requested in an opposition, the Court will not address Plaintiff's request.  <u>See</u> Civ. L.R. 7-8.

9

procedures. Furthermore, as the Court explained at the hearing on this motion, the Court is required to follow Ninth Circuit law, even if it is, as Plaintiff contends, wrongly decided.

Here, Defendant PFAA informed Plaintiff that, although it would not fund his arbitration, he had the right to pursue his grievance against Defendant Northwest to arbitration. But he did not pursue his grievance. Because Plaintiff failed to exhaust the contractual grievance procedures available to him, the Court must dismiss his claim for breach of the duty of fair representation.

## II. Motion to permit conditional withdrawal of counsel

Defendant PFAA, together with its counsel, move for an order permitting its counsel of record to withdraw conditionally from this action. At the hearing on Defendant PFAA's motion to dismiss or, in the alternative, for summary judgment, defense counsel withdrew this motion. Defense counsel will continue to represent Defendant PFAA until judgment is entered in this case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant PFAA's Motion to Dismiss (Docket No. 67).[6] Plaintiff's claim against Defendant PFAA is dismissed for failure to pursue contractual grievance procedures. Defendant PFAA's Motion to Permit

---

[6] Both parties submitted numerous objections to the other parties' evidence. To the extent that the Court relied upon evidence to which there is an objection, the parties' objections are overruled. To the extent that the Court did not rely on such evidence, the parties' objections are overruled as moot. The Court has not relied on any inadmissible evidence in deciding this motion.

10

1  Conditional Withdrawl of Counsel of Record (Docket No. 89) has been
2  WITHDRAWN.
3       IT IS SO ORDERED.
4  Dated: 10/11/06



CLAUDIA WILKEN
United States District Judge